UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   4/30/26

GERSON JOSUE SANTAMARIA TURCIOS,

Petitioner,

-against-

MARKWAYNE MULLIN, *in his capacity as Secretary for the United States Department of Homeland Security*,[1] et al.,

Respondents.

1:25-cv-8150-MKV

OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS

MARY KAY VYSKOCIL, United States District Judge:

Petitioner Gerson Josue Santamaria Turcios is "a native and citizen of Honduras" who illegally entered the United States by crossing the border from Mexico to Texas in 2019 [ECF No. 33 ("Pet.") ¶ 1; *see* ECF No. 18 ("Joyce Decl.") ¶¶ 6–8]. Thereafter, as Petitioner himself admits, he twice "failed to appear for a scheduled court hearing" in his removal proceedings. Pet. ¶ 2. As such, Petitioner admits, the Immigration Judge "found him inadmissible," under 8 U.S.C. § 1182(a), and "ordered him removed *in absentia*." *Id*. Nearly two years later, U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner. *Id*. ¶ 3.

Petitioner was detained pursuant to 8 U.S.C. § 1231(a) ("Section 1231(a)"). *See* Pet. ¶¶ 4, 20, 38. Section 1231(a) provides that ICE "shall detain" an alien who has been ordered removed during a statutory 90-day "removal period" during which an alien who has been ordered removed is supposed to be removed. 8 U.S.C. § 1231(a)(2)(A). The statute further provides that an "alien ordered removed who is inadmissible under section 1182 . . . *or* who has been determined by the [agency] to be a risk to the community *or* unlikely to comply with the order of removal, *may* be detained beyond the removal period." 8 U.S.C. § 1231(a)(6) (emphases added). Regulations

---

[1] Secretary of the Department of Homeland Security Markwayne Mullin is automatically substituted for former Secretary Kristi Noem pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

1

require ICE to conduct a "post-order custody review" ("POCR") to determine whether to continue to detain such an alien pending his removal.   *See* 8 C.F.R. § 241.4.

After his arrest by ICE, Petitioner commenced various efforts to stay his removal and reopen his removal proceedings.  Although ICE stands ready to remove Petitioner, the Board of Immigration Appeals ("BIA") has stayed his removal pending resolution of his appeal before the BIA.  Petitioner has been in ICE custody since his arrest, and ICE has determined that it should continue to detain him.  Petitioner contends that he was denied an adequate POCR and, as such, he should be released from custody while he attempts to avoid removal.

However, as Petitioner admits, he was found "inadmissible under section 1182" by the Immigration Judge, which means ICE has statutory authority to continue to detain him.  8 U.S.C. § 1231(a)(6); *see* Pet. ¶ 2.  Further, in light of Petitioner's admitted failure to appear for prior "scheduled court hearing[s]" in his removal proceedings and his failure to comply with a final order of removal, Pet. ¶¶ 2, 3, ICE also has statutory authority to detain Petitioner on the ground that he is "unlikely to comply" with future removal, 8 U.S.C. § 1231(a)(6).  Although Petitioner has identified several glitches in the POCR process, the only significant procedural error has been cured, and Petitioner's remaining quibble with the POCR does not warrant the extraordinary remedy of a writ of habeas corpus.  Accordingly, for the reasons set forth below, the Petition is DENIED in its entirety.

## I.    BACKGROUND[2]

Petitioner is a native and citizen of Honduras [ECF No. 33 ("Pet.") ¶ 1; *see also* ECF Nos.

---

[2] The background is drawn from the parties' numerous submissions over the course of this case, including the operative petition [ECF No. 33 (the "Petition" or "Pet.")], the Declaration of Deputy Field Office Director William Joyce [ECF No. 18 ("Joyce Decl.")], the Return to the Petition and attached exhibits [ECF No. 16], and submissions concerning an admitted error in conducting the first POCR and steps taken in response to that error, as set forth in detail below [*see* ECF Nos. 21 ("Reply"), 22 ("Gov. Dec. Letter"), 23 ("Joyce Supp. Decl."), 24 ("Pet. Dec. Letter"), 31 ("Gov. Feb. Letter"), 32 ("Pet. Feb. Letter")], among other filings.

1, 7]. In 2019, when he was seventeen years old, Petitioner illegally entered the United States from Mexico by crossing the international border near Hidalgo, Texas [ECF No. 18 ("Joyce Decl.") ¶¶ 7, 8]. An agent of United States Customs and Border Patrol ("CBP") encountered Petitioner near the border. *See* Joyce Decl. ¶ 7. CBP "determined" that Petitioner "had illegally entered the United States without inspection, and did not possess the necessary legal documentation to enter, pass through, or remain in the United States." *Id.* ¶ 8.

CBP arrested Petitioner and transported him to the Texas Border Patrol Station, where he was processed as "an unaccompanied alien child" and placed in the custody of the United States Department of Health and Human Services' Office of Refugee Resettlement ("ORR"). Joyce Decl. ¶ 8. CBP also "personally served" Petitioner with a Notice to Appear ("NTA"), charging him with being inadmissible and removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") [ECF No. 16-1 ("NTA")]. *Id.* ¶ 9; *see* 8 U.S.C. § 1182(a)(6)(A)(i). Petitioner was also provided with a list of organizations and attorneys which provide free legal services. Joyce Decl. ¶ 9.

The NTA stated that Petitioner should appear before an immigration judge in Texas. NTA at 1; Joyce Decl. ¶ 9. However, after the NTA issued, Petitioner was released from ORR custody to his brother, who lives in Rhinebeck, New York [ECF No. 16-2 at 3]. Joyce Decl. ¶ 10. As such, U.S. Immigration and Customs Enforcement ("ICE") promptly mailed a notice to Petitioner's address in Rhinebeck stating that his case would proceed before the immigration court at 26 Federal Plaza, New York, NY [ECF No. 16-2 at 1]. *See* Joyce Decl. ¶ 11.

After several adjournments, a "hearing was eventually scheduled for March 17, 2023." Pet. ¶ 28; *see id.* ¶ 27; Joyce Decl. ¶¶ 12–14. Notices of the adjournments and of the March 17, 2023 hearing were all sent to "Petitioner's address in Rhinebeck." Joyce Decl. ¶ 17. "Petitioner

3

attended" the March 17, 2023 hearing, "but the Immigration Judge ('IJ') was not present and the case was adjourned" yet again.  Pet. ¶ 28; *see* Joyce Decl. ¶ 15 (attesting that "the immigration judge was ill" on that date).

Thereafter, the hearing was rescheduled for August 4, 2023, "but Petitioner did not attend." Pet. ¶ 28; *see* Joyce Decl. ¶ 18.  The hearing was rescheduled for November 3, 2023, but Petitioner again "failed to appear."  Pet. ¶ 2; *see id.* ¶ 28 (acknowledging, in his own Petition, that he again "did not appear at the hearing"); Joyce Decl. ¶¶ 18, 19.  "All of the hearing notices," for the hearing that Petitioner attended and the hearings for which he failed to appear, were mailed to the same address in Rhinebeck.  Joyce Decl. ¶ 17.  Nevertheless, Petitioner contends that "he did not receive" notice of the November 3, 2023 hearing.[3]  Pet. ¶ 28.

At the hearing on November 3, 2023, for which Petitioner failed to appear, the Immigration Judge "found [Petitioner] inadmissible" under 8 U.S.C. § 1182(a) and "ordered him removed *in absentia*."  Pet. ¶ 2; *see id.* ¶ 28; Joyce Decl. ¶ 19 [ECF No. 16-3 ("Order of Removal *In Abstentia*") at 1 (finding that "DHS submitted documentary evidence . . . that established the truth of the allegations" in the NTA that Petitioner was inadmissible and removable "as charged")].  "A copy of the removal order was mailed to Petitioner's address."  Joyce Decl. ¶ 19.  Petitioner contends that he did not receive notice of the removal order.  Pet. ¶ 28.

On July 18, 2025, "ICE agents encountered Petitioner during an operation to arrest another alien who had been ordered removed from the United States, which took place at [Petitioner's]

---

[3] Petitioner also speculates that "[i]t is unclear whether or not notice of [the August 4, 2023] hearing [that Petitioner failed to attend] had been sent to him, as the Immigration Judge did not enter a removal order" the first time Petitioner failed to appear." Pet. ¶ 28.  However, unrebutted evidence in the record establishes that "a notice was sent to Petitioner indicating that his hearing date had again been rescheduled to August 4, 2023." Joyce Decl. ¶ 16.  When Petitioner failed to appear on August 4, 2023, "[t]he immigration judge" afforded Petitioner a second chance to appear and be heard at his removal proceedings and "re-noticed the hearing to November 3, 2023." *Id.* ¶ 18.  "A notice was mailed to Petitioner's Rhinebeck address" for the November 3, 2023 hearing. *Id.*  However, "Petitioner again failed to appear at the hearing on November 3, 2023." *Id.* ¶ 19.

Rhinebeck address."   Joyce Decl. ¶ 21; *see* Pet. ¶ 29.   The ICE "agents determined that that Petitioner had no legal status to be in the United States" and arrested him.   Joyce Decl. ¶ 21. During processing, Petitioner was provided with various resources, including "a list of free legal service providers."   *Id.* ¶ 22.   He was "detained at the Orange County Jail in Goshen, Orange County, New York."   Pet. ¶ 3.

According to ICE, at that time, "Petitioner stated that he did not fear harm or persecution if he were to be returned to Honduras."   Joyce Decl. ¶ 22.   ICE also determined that Petitioner had "a valid travel document for return to Honduras."   *Id.* ¶ 37.   As such, at that time, ICE intended to "transport[]" Petitioner to "Louisiana for staging for removal."   *Id.* ¶ 23.

Petitioner, through counsel, quickly filed a petition for a writ of habeas corpus, together with a motion for a temporary restraining order and preliminary injunction, "to stay his removal" [25-cv-5941, ECF No. 20 ("MMG Op.") at 4; *see* ECF Nos. 1, 6].  *See Santamaria Turcio v. Noem et al.*, 25-cv-5941 (MMG) (S.D.N.Y. 2025) (hereinafter, "*Turcio I*").   The day that Petitioner filed *Turcio I*, Judge Abrams, as Part I judge, issued an order restraining Respondents from transferring Petitioner out of this District [25-cv-5941, ECF No. 11].   After briefing and a hearing, however, she denied Petitioner's request for a temporary restraining order staying his removal [ECF No. 19]. MMG Op. at 4.   Thereafter, Judge Garnett, as presiding judge, denied the habeas petition, and the request for a preliminary injunction, "because the Court lack[ed] jurisdiction to grant the requested relief."   *Id.*   Judge Garnett explained that "[u]nder the plain language of 8 U.S.C. § 1252, Congress has prohibited district courts from staying a noncitizen's removal."   *Id.*

"On the same date" that *Turcio I* was dismissed for lack of jurisdiction, July 29, 2025, "Petitioner filed a motion with the Immigration Court[] to rescind the removal order and reopen the proceedings."   Pet. ¶ 30; *see* Joyce Decl. ¶ 25.   Petitioner represented that "he intended to apply

for asylum and related relief." Pet. ¶ 30. He also submitted a declaration "in which he stated that he had never received notice of the removal hearing at which he had been ordered deported." *Id.*; *see* Joyce Decl. ¶ 25. In addition, Petitioner submitted a declaration from "another person . . . who had been living at the same address" representing that there were "problems with receiving mail" and "declarations from other people who lived on the same mail route" who likewise stated that they "had experienced problems" with the mail. Pet. ¶ 30.

The "IJ denied the motion to reopen." Pet. ¶ 31; *see* Joyce Decl. ¶ 26. As Petitioner himself acknowledges, the IJ rejected Petitioner's "self-interested statement" that he did not receive notice of the hearings for which he failed to appear [ECF No. 16-5 ("IJ Denial Order")]. Pet. ¶ 31. The IJ further ruled that Petitioner had "failed to exercise due diligence," Pet. ¶ 31, since he did nothing to "inquire into the status of his removal proceedings or apply for relief" for a period of several years during which he was subject to a final order of removal. IJ Denial Order at 2.

Thereafter, in early August 2025, Petitioner filed an appeal with the Board of Immigration Appeals ("BIA") and an emergency motion for a stay of removal. *See* Pet. ¶ 32; Joyce Decl. ¶¶ 27, 28. The BIA issued an order administratively staying his removal pending the outcome of the appeal. Pet. ¶ 33; Joyce Decl. ¶ 29.

In September 2025, Petitioner's counsel submitted to ICE a letter requesting Petitioner's immediate release from ICE custody together with an affidavit from a "citizen in Rhinebeck, who offered to ensure [Petitioner's] attendance at any future immigration" proceedings and more than "fifty declarations from people in the community, attesting to his good nature and character." Pet. ¶ 34 [ECF No. 21-2 at 1–5 (the "September Release Request")]; *see* Joyce Decl. ¶ 31.

Separately, in September 2025, according to the Government, "ICE personally served notice to Petitioner that it would conduct a 90-day Post Order Custody Review" ("POCR") in mid-

October 2025.  Joyce Decl. ¶ 32 [ECF No. 16-7 ("Notice to Alien of File Custody Review")].[4] The Notice states that ICE reviews a "case for consideration of release on an Order of Supervision" if ICE has not removed the alien "within the removal period as set forth in INA 241(a) (normally 90-days)."  Notice to Alien of File Custody Review at 1.  The Notice stresses: "Release, however, is dependent on your demonstrating . . . that you **WILL NOT** pose a danger to the community and **WILL NOT** present a flight risk."  *Id.* (emphasis in original).  Pertinent here, the Notice states that the review takes into account, among other things, "failures to appear" at prior "proceedings."  *Id*. The Notice further states that a detained alien "may submit any documentation [he] wish[es] to be reviewed in support of [his] release" and that an "attorney or other persona my submit materials on [his] behalf."  *Id.*; *see* Joyce Decl. ¶ 32.  There is no dispute that "ICE did not mail a copy of the above [described] [N]otice to Petitioner's counsel."  Joyce Decl. ¶ 33.

In the interim, in a letter dated October 3, 2025, ICE responded to the September Release Request [ECF No. 16-8 ("October 3, 2025 Letter")].  In the October 3, 2025 Letter, a subordinate of the Interim Field Office Director stated that she had "carefully considered all supporting documents that [counsel] provided in [his] release request," together with other relevant information.  October 3, 2025 Letter at 1.  She found "no compelling reason to warrant a favorable exercise of [ICE's] discretion" to release Petitioner.  *Id.*

Thereafter, on October 14, 2025, ICE separately conducted the POCR for which it had previously provided notice to Petitioner (the "October POCR").  Joyce Decl. ¶ 36.  According to

---

[4] As explained below, Petitioner initially asserted in a memorandum of law that "neither Petitioner nor his attorney received any prior notice of th[e] custody review" that took place in October 2025 [ECF No. 10 ("Pet. Mem.") at 3]. Thereafter, the Government submitted a copy of the Notice to Alien of File Custody Review which purports to bear Petitioner's fingerprint as proof of service [ECF No. 16-7].  In his reply brief, Petitioner did not press the argument that he was not personally served with the Notice.  Rather, as explained below, the parties' arguments focused on the failure of ICE to serve Petitioner's *counsel* with the Notice to Alien of File Custody Review in advance of the October 2025 POCR and whether that is a reason for the Court to order Petitioner's release, notwithstanding that ICE conducted another POCR after giving notice both to Petitioner and his counsel.

the Government, ICE conducted the October POCR "based on an individualized review of his immigration history and related documents and information." *Id*. There is no dispute that ICE "did not consider the materials that Petitioner's counsel had submitted" in his September Release Request in connection with the October POCR. *Id*. ¶ 36 n.2.

In a letter dated October 14, 2025, ICE informed Petitioner of its determination not to release him "based on a review of [his] file" and "the factors for consideration set forth at 8 C.F.R. § 241.4(e), (f), and (g)."[5] Pet., Ex. A (the "October POCR Decision") at 1 [ECF No. 16-9 (same)]. The October POCR Decision stated: "ICE has determined to maintain your custody because you have not demonstrated that, if released, you will not pose a danger to the community or the safety of other persons." *Id.* The October Decision went on to recite that Petitioner had "illegally entered" the country "without admission or parole," had "failed to appear" in immigration court, had been ordered removed "*in absentia*," and had been arrested pursuant to an "outstanding removal order." *Id.* Thus, the October Decision pronounced, "ICE is unable to conclude that the factors set forth at 8 C.F.R. § 241.1(e)," which require an alien to demonstrate that he is neither a danger nor a flight risk, "have been satisfied." *Id.*

Meanwhile, Petitioner filed the original petition for a writ of habeas corpus in this action on October 1, 2025, before the October POCR [ECF No. 1 (the "Original Petition")]. He did not file a motion for emergency relief at that time. In the Original Petition, Petitioner argued that he was "being detained pursuant to 8 U.S.C. § 1226(a)" ("Section 1226(a)"), rather than Section

---

[5] As explained below, the relevant regulations provide in pertinent part that, "[b]efore making any recommendation or decision to release a detainee," ICE "must conclude" that the detainee "is not likely to pose a threat to the community following release;" "is not likely to violate the conditions of release; *and* . . . [t]he detainee does not pose a significant flight risk if released." 8 C.F.R. §§ 241.4(e)(4)–(6) (emphasis added). ICE is also expressly required to consider prior "failures to appear for immigration . . . proceedings." *Id*. § 241.4(f)(7).

1231(a), "because a stay of removal was issued" by the BIA.[6]  Original Petition ¶ 2.  For relief, Petitioner sought an "individualized" bond hearing "at which Respondents bear the burden of establishing that [his] continued detention is justified" pursuant to Section 1226(a).  Original Petition ¶ 6.

Soon after Petitioner filed the Original Petition, new counsel (one of at least four attorneys who has represented Petitioner) filed a notice of appearance [ECF No. 4].  Thereafter, on November 1, 2025, Petitioner filed an amended petition for a writ of habeas corpus, asserting different arguments and seeking different relief [ECF No. 7 (the "First Amended Petition" or "FAP")].  In particular, Petitioner argued that he *is* detained pursuant to Section 1231(a), which entitles him to a post-order custody review, but the October POCR "did not comply with any of the procedural requirements," and "Respondents' decision to continue [Petitioner's] detention . . . lacked any basis."  FAP ¶ 6; *see id.* ¶¶ 19–22, 38–41.  For relief, Petitioner sought his release from detention, "or in the alternative" a bond hearing before an immigration judge.  *Id.* ¶ 1; *see id.* at 12.

Five days after filing the First Amended Petition, Petitioner filed a motion for emergency relief accompanied by a memorandum of law [ECF Nos. 9, 10 ("Pet. Mem.")].  In his memorandum of law, Petitioner clarified his allegations that ICE failed to comply with the procedural requirements for a post-order custody review, asserting that "neither Petitioner nor his

---

[6] As explained below, Petitioner now agrees that he is detained pursuant to Section 1231 and not Section 1226.  *See* Pet. ¶ 38.  By statute, Section 1226 generally governs detention of certain aliens "pending a decision" on removal whereas Section 1231 generally governs detention of aliens, like Petitioner, who have been "ordered removed."  8 U.S.C. §§ 1226(a), 1231(a).  Notably, unlike Section 1226, Section 1231 does not provide for a bond hearing.  *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 574 (2022).  Under Second Circuit precedent, "if a *court* orders a stay of the removal of the alien" who has been ordered removed, 8 U.S.C. § 1231(a)(1)(B)(iii) (emphasis added), his continued detention is governed by Section 1226(a) rather than Section 1231.  *See Hechavarria v. Sessions*, 891 F.3d 49 (2d Cir. 2018).  As Petitioner now tacitly concedes, this precedent does not apply to this case because the BIA, rather than the Second Circuit, has stayed Petitioner's removal.  *See State v. Dep't of Justice*, 951 F.3d 84, 118 (2d Cir. 2020); *Moscoso v. Joyce*, No. 22-cv-6272 (PKC), 2023 WL 2016371, at *3 (S.D.N.Y. Feb. 15, 2023); Pet. ¶ 38.

attorney received any prior notice of this custody review" and, as such, were not "afforded any opportunity to make any submissions in support of his release, both of which are required by the regulations" governing post-order custody reviews.  Pet. Mem. at 3; *see id.* at 7, 9–12.  He also stressed that there was no basis for ICE to conclude that he will pose a danger if released.  *See id.* at 4, 15–16.  Petitioner asserted that ICE has violated his rights under the Due Process Clause of the Fifth Amendment and the Administrative Procedures Act (APA).  *See id.* ¶¶ 38–55.

Simultaneously with his motion for emergency relief, Petitioner also filed a proposed schedule, on consent, giving the Government nearly two weeks to respond to both the First Amended Petition and the motion for emergency relief and giving Petitioner nearly a week thereafter to file a reply in further support of his position [ECF No. 11].  The Court immediately issued an order endorsing the parties' proposed briefing schedule [ECF No. 12].  The Government later requested an extension of time to file its opposition papers and a corresponding extension of the deadline for Petitioner to file his reply, which request the Court granted in part and denied in part [ECF Nos. 14, 15].[7]

The Government thereafter filed its opposition to the First Amended Petition and motion for emergency relief, consisting of a memorandum of law, a "Return" to the petition attaching a number of exhibits, and the declaration of Deputy Field Office Director William Joyce [ECF Nos. 16 (the "Return"), 17 ("Gov. Opp."), 18 ("Joyce Decl.")].  In its opposition papers, the Government offered evidence that ICE had personally served Petitioner with the Notice to Alien of File Custody Review for the October POCR, which appears to bear Petitioner's fingerprint [ECF No. 16-7].  The

---

[7] The Government had requested an extension of time from November 18, 2025 until November 25, 2025 to file its opposition and a corresponding extension of time from November 24, 2025 until December 1, 2025 for Petitioner to file his reply [ECF No. 14].  The Court directed the Government to file its opposition by November 21, 2025 and, because of the Thanksgiving holiday, extended Petitioner's deadline to December 1, 2025, noting that he was free to file his reply "earlier" [ECF No. 15].  Petitioner did not avail himself of the option to file his reply earlier.

Government also initially represented that ICE "did not mail a copy" of the Notice to Petitioner's counsel only because counsel had not "filed an ICE Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative," which filing triggers the agency's obligation, under the applicable regulation, to serve an attorney with documents in connection with a POCR. Joyce Decl. ¶ 33; *see* Gov. Opp. at 5, 9 (citing 8 C.F.R. § 241.4(d)(3)). The Government further argued that, in all events, Petitioner is lawfully detained under Section 1231(a), ICE did not deprive Petitioner of due process, and the Court should reject Petitioner's APA claim because it is not cognizable in a habeas case. *See* Gov. Opp. at 6–16.

Petitioner filed a reply in further support of his application for relief [ECF No. 21 ("Reply")]. In his Reply, Petitioner offered evidence that, contrary to the Government's representation in its opposition papers, counsel for Petitioner had submitted a G-28 to ICE, via email, together with the September Release Request [ECF No. 21-2 at 6–9 (the "G-28"); *see* ECF No. 21-3].[8] The Government thereafter filed a letter and a supplemental declaration from Deputy Field Office Director Joyce representing that, because the G-28 was "contained in the same PDF" with voluminous other materials, it "[r]egrettably" was "overlooked and not filed or noted within ICE's system" [ECF Nos. 22 ("Gov. Dec. Letter"), 23 ("Joyce Supp. Decl.") ¶ 4].

---

[8] Petitioner also asserts that the G-28 was "filed with this Court as an exhibit to the [Original] [P]etition (see ECF 1-13)." Reply at 3. He repeats this assertion in a subsequent letter [ECF No. 24 ("Pet. Dec. Letter") at 1 (asserting that the G-28 was "filed with the Court as an exhibit to the Petition, on October 1, 2025 (ECF 1-13)")]. The Court has carefully reviewed the Original Petition, and the G-28 does not appear to be among the voluminous exhibits. It certainly is not at ECF No. 1-13, which consists entirely of an ICE training manual for the POCR process [ECF No. 1-13]. In the Reply, Petitioner asserts that the September Release Request "includ[ed] the G-28." Reply at 3. The G-28 does appear in the same exhibit as the September Release Request in the Reply [ECF No. 21-2]. However, in the Original Petition, the G-28 is *not* part of the September Release Request exhibit [ECF No. 1-12]. Having repeatedly reviewed the 481 pages of documents filed at ECF No. 1, the Court cannot locate the G-28. The absence of the G-28 from the Original Petition is immaterial, however, because the Government now admits that counsel for Petitioner had in fact submitted the form to ICE, which agency therefore should have served counsel with a copy of the Notice to Alien of File Custody Review [ECF Nos. 22 ("Gov. Dec. Letter"), 23 ("Joyce Supp. Decl.")].

In light of its now-admitted error in connection with the October POCR, "ICE [determined that it would] conduct a new Post Order Custody Review, providing at least two weeks' notice to Petitioner's counsel to allow for adequate preparation and submission of relevant documents by counsel and Petitioner." Joyce Supp. Decl. ¶ 7. Petitioner responded that it was not "credible" that the G-28 had been overlooked [ECF No. 24 ("Pet. Dec. Letter") at 1].[9] Petitioner speculated that, instead, ICE "intentionally did not notify Petitioner's attorney" in advance of the October POCR. Pet. Dec. Letter at 1. Petitioner further asserted that ICE had engaged in a "bad-faith refusal to consider evidence" favorable to Petitioner. *Id.* at 2. As such, Petitioner argued that he would not "receive a fair custody review," and the Court should, therefore, order Petitioner's immediate release, rather than allow ICE to conduct a new POCR. *Id.*

After careful review of the parties' briefing and letters, the Court issued an Order setting a deadline for the parties to file a joint status letter "informing the Court whether ICE ha[d] provided Plaintiff's counsel with notice of a new Post Order Custody Review ('POCR') and whether a new POCR ha[d] occurred" [ECF No. 26 ("Jan. Order")]. The Court acknowledged Petitioner's position that a new POCR would not cure the alleged violations that he argued require Petitioner's immediate release but the Court declined to rule on that argument at that time. *See* Jan. Order. The Court also resolved several administrative issues, including requiring Petitioner to file a corrected version the First Amended Petition, *id.*, which Petitioner later filed and which is the

---

[9] In support of his argument that it was not "credible" that ICE had unintentionally overlooked the G-28 and, instead, "Respondents intentionally" have acted in bad faith to deny Petitioner an adequate custody review, Petitioner sarcastically asserts that "ICE also apparently overlooked" the copy of the G-28 that Petitioner asserts was "filed with the Court as an exhibit to the [Original] Petition, on October 1, 2025 (ECF 1-13)." Pet. Dec. Letter at 1–2. However, as noted above, after careful review, the Court has not been able to locate a copy of the G-28 anywhere among the exhibits to the Original Petition (it certainly is not filed at ECF No. 1-13). *Supra* at n.7. As such, the Court is not persuaded by Petitioner's sarcastic contention that Respondents disregarded that purported filing intentionally and in bad faith.

12

operative petition in this case [ECF No. 33 (the "Petition" or "Pet.")].  The substance of the Petition is the same as the First Amended Petition, summarized above.

In accordance with Court Orders, the Government filed a letter, dated February 10, 2026, advising the Court that the new "POCR review took place on February 1" (the "New POCR") after notice was provided both to Petitioner and his counsel [ECF No. 31 ("Gov. Feb. Letter"); *see* ECF No. 31-1 ("Notice of New POCR")].  The Government submitted evidence that, in advance of the New POCR, Petitioner's counsel submitted a letter in support of Petitioner's release together with an affidavit from a citizen attesting that she would ensure Petitioner's attendance at future immigration court hearings and numerous declarations in support of Petitioner [ECF No. 31-2 ("Pet. New POCR Submission")].  ICE, however, determined that Petitioner should remain in custody pending resolution of Petitioner's effort to appeal his order of removal and reopen his removal proceedings [ECF No. 31-3 (the "New POCR Decision")].

In particular, like the October POCR Decision, the New POCR Decision states: "ICE has determined to maintain your custody because you have not demonstrated that, if released, you will not pose a danger to the community or the safety of other persons."  New POCR Decision at 1. The New POCR Decision proceeds to cite, as information relevant to "such determination," that Petitioner "illegally entered the United States without admission or parole," that he was served with the NTA "charging inadmissibility," that he "failed to appear" before the Immigration Judge, that, as such, the Immigration Judge "ordered [Petitioner] removed . . . *in abstentia*," and that, nearly two years later, ICE "arrested [Petitioner] pursuant to an outstanding removal order."  *Id.* The New POCR Decision states: "Based on the above, you are to remain in ICE custody pending the outcome of your motion to reopen proceedings . . . , as ICE is unable to conclude that the factors set forth at 8 C.F.R. § 241.4(e) have been satisfied."  *Id.*

Petitioner thereafter filed a letter dated February 10, 2026 [ECF No. 32 ("Pet. Feb. Letter")]. He argues that the new "decision to maintain Petitioner in custody . . . must be set aside." Pet. Feb. Letter at 1. In particular, he argues that the "late POCR does not cure the initial due process violation in the October . . . POCR, which was conducted without notice to counsel and without consideration of the significant evidence submitted in support of release." *Id.* Petitioner argues that ICE had "deliberately" violated its regulations and Petitioner's rights in connection with the October POCR. *Id.* Petitioner further argues that "the sole basis" for the New POCR Decision was the assertion that Petitioner "had not shown that he would not pose a danger." *Id.* at 1, 2. However, Petitioner argues, he had provided evidence that he was not a danger, and the New POCR "simply recited Petitioner's immigration history and made no reference to any allegations of [dangerousness]" in support of the decision to continue custody. *Id.*

The Government filed a letter, dated February 11, 2026, in reply [ECF No. 34 ("Gov. Feb. Reply")]. The Government argues that the New POCR Decision "document" states that "there is no basis for release based on a review of Petitioner's immigration history and his failure to appear for certain immigration hearings." Gov. Feb. Reply at 1. The Government argues that, as the Notice of New POCR plainly states, "failures to appear" are among the "criteria relevant to the [custody] determination," and that "[n]othing more is required." *Id*. The Government further notes that "ICE received the submission from Petitioner's counsel" in connection with the New POCR, but "it apparently did not sway the decisionmaker." *Id.*

On April 14, 2026, new counsel for Petitioner filed a motion to voluntarily dismiss the Petition without prejudice, so that Petitioner may seek relief before a different court [ECF Nos. 38, 38-1 ("Mot."), 38-2]. Petitioner represents that the Government has transferred him from the Orange County Jail in Goshen, New York, where Petitioner was detained when he commenced this

14

case, to the Metropolitan Detention Center in Brooklyn ("MDC").  Mot at 1.  Petitioner argues that this Court is no longer a "proper custodial jurisdiction" and that the Government would not be prejudiced by litigating Petitioner's case anew, before a new judge, in the Eastern District of New York.  *See* Mot. at 2.  The Government filed an opposition to Petitioner's motion, arguing that the Court retains jurisdiction and the Government would suffer prejudice [ECF No. 40].  Petitioner filed a reply [ECF No. 41 ("Mot. Reply")].[10]

## II.    DISCUSSION

"Habeas is at its core a remedy for unlawful executive detention." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 119 (2020) (alteration omitted) (quoting *Munaf v. Geren*, 553 U.S. 674, 693 (2008)).  Petitioner here is lawfully detained pursuant to 8 U.S.C. § 1231(a) ("Section 1231(a)").  As explained below, Petitioner meets the statutory criteria for the Government to extend his detention while it attempts to secure his removal, which is stayed at Petitioner's request.  *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 579–80 (2022).  Moreover, as explained below, because Petitioner is an alien who has never been lawfully admitted into the United States, both Petitioner's constitutional due process rights and this Court's power of judicial review are limited in scope.  *See Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *Henderson v. I.N.S.*, 157 F.3d 106, 122 (2d Cir. 1998).  While Petitioner argues that ICE has violated certain regulations and failed to provide him with an adequate POCR, Petitioner's APA claim might not be cognizable and certainly does not warrant the extraordinary remedy of issuing a writ of habeas corpus.  *See Sol v. I.N.S.*, 274 F.3d 648, 651 (2d Cir. 2001); *Magellan Tech., Inc. v. United States*

---

[10] Petitioner thereafter filed a notice of supplemental authority drawing the Court's attention to the Second Circuit's recent decision in *Cunha v. Freden*, No, 25-3141 (2d Cir. Apr. 28, 2026) [ECF No. 43].  In *Cunha*, the Second Circuit held that 8 U.S.C. § 1226(a), rather than 8 U.S.C. § 1225(b)(2)(A), governs the detention of aliens who illegally enter and remain present in the country during the pendency of such aliens' removal proceedings.  However, as Petitioner expressly agrees, Petitioner has already been ordered removed, and his detention is governed by Section 1231(a).  *See* Pet. ¶¶ 2, 38.  As such, *Cunha* does not govern this case.

*Food & Drug Admin.*, 70 F.4th 622, 629 (2d Cir. 2023).  Indeed, it would cut against established congressional intent and Supreme Court precedent for the Court to order the Government to release an inadmissible alien into the country because of quarrels with an agency decision-maker acting within its statutory authority to detain him.  *See Henderson*, 157 F.3d at 120, 114; *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892) *Heikkila v. Barber*, 345 U.S. 229, 236 (1953).

**A.  Petitioner's Request for a New Judge Is Denied.**

As a threshold matter, the Court must address Petitioner's contention that his transfer to MDC created a "jurisdictional complication," which, in turn, created a proper basis for Petitioner's motion to voluntarily dismiss this case for the express purpose of immediately challenging his detention before a new judge in the Eastern District of New York [ECF No. 41 at 5].  The Court's jurisdiction to rule on the Petition is absolutely clear and uncomplicated.  The Supreme Court has expressly held that when a habeas petitioner "files a petition naming [his] immediate custodian, the District Court retains jurisdiction" to rule on the petition notwithstanding any subsequent transfer.  *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004).  There is no dispute that, when he filed the Petition, Petitioner was "detained at the Orange County Jail in Goshen, Orange County, New York," which is in this District, and properly named the Warden of the Orange County Jail as his custodian.  Pet. ¶¶ 3, 13, 14.  As such, the Court clearly "retains jurisdiction" to rule on the Petition notwithstanding Petitioner's subsequent transfer to MDC.  *Padilla*, 542 U.S. at 441.

As Petitioner tacitly acknowledges, he is not free, in this posture, to voluntarily dismiss his habeas case without prejudice and litigate anew before a different judge in the Eastern District of New York.  *See* Mot. at 2 & n.1.  Rather, pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, the "action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  Fed. R. Civ. P. 41(a)(2).  The Second Circuit has identified five

16

non-exhaustive factors relevant to determining whether a motion for voluntary dismissal without prejudice should be granted or should be denied as prejudicial:

> [1] the plaintiff's diligence in bringing the motion; [2] any "undue vexatiousness" on plaintiff's part; [3] the extent to which the suit has progressed, including the defendant's effort and expense in preparation for [resolution]; [4] the duplicative expense of relitigation; and [5] the adequacy of plaintiff's explanation for the need to dismiss.

*United States v. Ross*, 161 F.4th 100, 122 (2d Cir. 2025) (quoting *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990)).

These factors weigh against granting Petitioner's motion for voluntary dismissal without prejudice. In particular, as explained above, Petitioner's explanation for the need to voluntarily dismiss is wholly inadequate because there is no question that this Court retains jurisdiction to rule on his Petition. *See Ross*, 161 F.4th at 122; *Padilla*, 542 U.S. at 441. With respect to Petitioner's diligence in bringing the motion for voluntary dismissal, Petitioner argues that he acted diligently by bring the motion in response to the Government's "own transfer decision." Mot. Reply at 4–5. The Court, however, has already rejected this explanation for the motion. Rather, Petitioner's motion is a transparent effort to engage in judge-shopping. Such "undue vexatiousness" weighs against voluntary dismissal. *Ross*, 161 F.4th at 122 (quoting *Zagano*, 900 F.2d at 14). Moreover, this "suit has progressed" to a resolution in this Court, and the Government would have to devote additional resources to relitigating this case in the Eastern District. *Id.* Although not one of the enumerated *Zagano* factors, the Court notes that the traditional value of judicial economy weighs against granting Petitioner's motion, since the Court has already devoted significant time and effort to the Petition. *See Guzman v. Hazemag U.S.A., Inc.*, 145 F.R.D. 308, 311 (E.D.N.Y. 1993); *Philan Ins. Ltd. v. Frank B. Hall & Co.*, 786 F. Supp. 345, 348 (S.D.N.Y. 1992).

For all of these reasons, Petitioner's motion to voluntarily dismiss the Petition before this Court

Case 1:25-cv-08150-MKV    Document 44    Filed 04/30/26    Page 18 of 31

without prejudice to immediately challenging his detention before a different judge in the Eastern District [ECF No. 38] is DENIED.

**B.  Petitioner Is Lawfully Detained under Section 1231(a).**

By statute, under Section 1231(a), ICE has authority to detain an alien who is subject to a final order of removal.  *See* 8 U.S.C. § 1231(a); *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 580 (2022).  In particular, Section 1231(a) provides that "the Government 'shall' detain" an alien who has been ordered removed for a 90-day "removal period" during which "the Government generally must secure the noncitizen's removal."  *Arteaga-Martinez*, 596 U.S. at 578 (quoting 8 U.S.C. § 1231(a)(2).  This initial 90-day period of detention is "mandatory."  *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) ("During the removal period, detention is mandatory."); *see Jennings v. Rodriguez*, 583 U.S. 281, 298 (2018) ("the alien must be detained during [the removal] period"); *see also* 8 U.S.C. § 1231(a)(2)(A) ("Under no circumstance during the removal period shall the [Government] release an alien who has been found inadmissible under section 1182(a)(2).").  Here, there is no dispute that Petitioner is an alien who has been ordered removed.  *See* Pet. ¶ 2; *see id.* ¶ 28; Joyce Decl. ¶ 19; Order of Removal *In Absentia*.

Section 1231(a) expressly provides that the Government "may" continue to detain certain aliens beyond the 90-day removal period.  8 U.S.C. § 1231(a)(6); *see Arteaga-Martinez*, 596 U.S. at 578–79.  Specifically, the statute provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the [Executive Branch] to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).  Thus, the Government has statutory authority to (*i.e.* "may") continue to detain an alien who has been ordered removed on the ground that, *inter alia*, the alien "is

18

inadmissible under section 1182 . . . *or*" he presents a "risk to the community *or* [is] unlikely to comply with the order of removal." *Id.* (emphases added).

There is no dispute that Petitioner meets the first statutory criterion for continued detention. As Petitioner himself admits and the record before the Court establishes, the Immigration Judge who ordered his removal "found [Petitioner] inadmissible" under 8 U.S.C. § 1182(a).  Pet. ¶ 2; *see id.* ¶ 28; Joyce Decl. ¶ 19; Order of Removal *In Abstentia* at 1 (finding that "DHS submitted documentary evidence . . . that established the truth of the allegations" in the NTA that Petitioner was inadmissible and removable "as charged").  As such, based on the plain language of Section 1231(a), the Government has clear statutory authority to continue to detain Petitioner "beyond the [90-day] removal period" because he "is inadmissible under section 1182," without making any additional finding that Petitioner is also likely to be dangerous or unlikely to comply with his removal order.  8 U.S.C. § 1231(a)(6); *see United States v. Harris*, 838 F.3d 98, 105 (2d Cir. 2016) (discussing the "disjunctive 'or'" in "statutory construction").

Notably, here, the parties agree that the 90-day removal period, during which Petitioner was subject to mandatory detention, expired long before Petitioner was even apprehended.  *See* Pet. Mem. at 16; Gov. Opp. at 6 n.3.  As Petitioner explains, his "removal order became final, and the removal period commenced, when he was ordered removed *in absentia* in November 2023" and "expired 90 days later, in February 2024."  Pet. Mem. at 16.  However, Petitioner did not comply with his removal order, and ICE did not arrest Petitioner until July 2025.  *See* Joyce Decl. ¶ 21; Pet. ¶ 29; IJ Denial Order.  While Petitioner argues that he did not receive the Order of Removal *In Abstentia* that was sent to Petitioner's address, the Immigration Judge rejected that argument.[11]  The Immigration Judge also explained that, in all events, Petitioner obviously and

---

[11] The Court simply notes that the Second Circuit has elsewhere upheld "strong presumption[s]" that the postal service appropriately handles certified mail and that an Immigration Judge provides adequate notice to alien in removal

improperly had failed to "inquire into the status of his removal proceedings" for a period of several years.  IJ Denial Order at 2.

It is not the role of this Court to second-guess the Immigration Judge's determination as to Petitioner's noncompliance with his removal order.  *See* 8 U.S.C. § 1252(a)(5); *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011).  Petitioner has filed an appeal before the BIA.  Pet. ¶ 32; Joyce Decl. ¶¶ 27, 28.  Any appeal of the decision of the BIA must be brought before the Second Circuit.  *See* 8 U.S.C. § 1252(a)(5) (establishing the exclusive jurisdiction of the court of appeals); *Delgado*, 643 F.3d at 54–55.  The Court need not opine on whether the initial 90-day removal period was tolled, under Section 1231(a)(1)(C), which extends the removal period based on an alien's failure to make good faith efforts to depart the country, because the Government has at all times had authority to continue to detain Petitioner beyond the removal period under Section 1231(a)(6).  *See Agoro v. Dist. Dir. for Immigr. Custom Enf't*, No. 09-cv-8111 (SAS), 2010 WL 9976, at *4 (S.D.N.Y. Jan. 4, 2010) (declining to "decide when [the petitioner's] removal period began," since he could not show that he was entitled to relief), *aff'd sub nom. Agoro v. Dist. Dir. for Immigr. & Customs Enf't*, 403 F. App'x 536 (2d Cir. 2010).

Thus, based on the plain text of Section 1231(a), ICE is within its statutory authority to continue to detain Petitioner.  *See* 8 U.S.C. § 1231(a)(6).

## C.  Petitioner's Continued Detention Does Not Violate the Constitution.

The Supreme Court has held that "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned."  *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *see Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 648 (S.D.N.Y. 2018) (Sullivan, J.) (applying *Mezei* to an alien who, although physically present in the United

---

proceedings by sending notice via "certified mail to the alien's last known address."  *Fuentes-Argueta v. I.N.S.*, 101 F.3d 867, 869–871 (2d Cir. 1996); *see Illangakoon v. Holder*, 317 F. App'x 39, 41 (2d Cir. 2009).

States, had never been lawfully admitted). Indeed, citing *Mezei* in slightly different circumstances, the Second Circuit has held that "[i]ndefinite detention of excludable aliens does not violate due process." *Guzman v. Tippy*, 130 F.3d 64, 65–66 (2d Cir. 1997). There is no dispute that Petitioner illegally entered the country, has never been lawfully admitted into United States, and has been found inadmissible and ordered removed. *See* Joyce Decl. ¶¶ 7, 8, 19, Pet. ¶¶ 2, 28; Order of Removal *In Abstentia*. Thus, applying *Mezei* and its progeny, the Court concludes that Petitioner's continued detention does not violate the Constitution because Congress expressly "authorize" such continued detention under Section 1231(a). *See Mezei*, 345 U.S. at 212; *Guzman*, 130 F.3d at 66; *Poonjani*, 319 F. Supp. 3d at 648; 8 U.S.C. § 1231(a)(6).

Section 1231(a)(6), on its face, does not limit the length of continued detention after the initial 90-day removal period. *See* 8 U.S.C. § 1231(a)(6). In *Zadvydas v. Davis*, 533 U.S. 678 (2001), however, the Supreme Court, "interpreting the statute to avoid a serious constitutional threat," concluded that Congress did not "inten[d] to authorize indefinite, perhaps permanent, detention" under Section 1231(a)(6). *Zadvydas*, 533 U.S. at 699. Rather, the Supreme Court held, the statute authorizes detention for the "period reasonably necessary to secure removal." *Id.*[12]

In particular, the Supreme Court held that, while it is "presumptively reasonable" to detain an alien who has been ordered removed for a period of six months, thereafter, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. The Supreme Court explained that, "of course," not every alien must be released after six months. *Id.* Moreover, the Supreme Court made clear, the alien has the burden, in the first

---

[12] As the Supreme Court has later commented, the issue in *Zadvydas* was the indefinite detention of aliens who languish in ICE custody for years on end in "removable-but-unremovable limbo" because no country will accept them. *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 347 (2005). That is not an issue in this case, where "Petitioner has a valid travel document for return to Honduras." Joyce Decl. ¶ 37.

21

instance, to show that there is no real likelihood that he will be removed. *Id.* "For obvious reasons, a noncitizen's use of the American judicial process, to the extent it delays removal, does not warrant release under *Zadvydas*." *Portillo v. Decker*, No. 21-cv-9506 (PAE), 2022 WL 826941, at *5 (S.D.N.Y. Mar. 18, 2022); *see Guangzu Zheng v. Decker*, 618 F. App'x 26, 28 (2d Cir. 2015) (rejecting argument that there was no significant likelihood of removal in the reasonably foreseeable future where the alien had a valid travel document but had obtained a stay); *Abimbola v. Ridge*, 181 F. App'x 97, 99 (2d Cir. 2006) (describing petitioner's "pattern of seeking and/or receiving . . . stays" of removal as "a self-inflicted wound" that could not "establish" his "*Zadvydas* claim"); *Agoro*, 2010 WL 9976, at *5.

Petitioner includes in his briefing a cursory argument that his removal is not "reasonably foreseeable . . . while he has a stay of removal." Pet. Mem. at 19. However, as indicated above, the Second Circuit has squarely rejected such arguments. *See Guangzu Zheng*, 618 F. App'x at 28; *Abimbola*, 181 F. App'x at 99; *see also Portillo*, 2022 WL 826941, at *5; *Agoro*, 2010 WL 9976, at *5. Petitioner unsuccessfully sought "to stay his removal" in *Turcio I*, MMG Op. at 4, and, thereafter, successfully obtained an administrative stay of removal from the BIA, *see* Pet. ¶ 33; Joyce Decl. ¶ 29. The resulting delay in his removal is a "self-inflicted wound" that cannot "establish grounds for [a] *Zadvydas* claim." *Abimbola*, 181 F. App'x at 99. Aside from the stay he requested and obtained, Petitioner has not come forward with any "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Moreover, the Government has come forward with evidence that "Petitioner has a valid travel document for return to Honduras," and "ICE intends on moving forward with his removal" as soon as the "legal impediment to removal is lifted." Joyce Decl. ¶ 37. As such,

22

Petitioner cannot sustain a claim under *Zadvydas*.

Accordingly, the Court rejects any argument that Petitioner's continued detention violates the Constitution based on the length of his detention.[13]

### D.  Petitioner's Claim that ICE Violated its POCR Regulations Might Not Be Cognizable and Does Not Warrant his Release.

Petitioner's principal argument for his immediate release into the country is that, according to Petitioner, ICE failed to comply with its own regulations governing post-order custody reviews codified at 8 C.F.R. § 241.4.  *See* Pet. Mem. at 6–16; Reply at 2–17; Pet. Dec. Letter; Pet. Feb. Letter.  Specifically, Petitioner stresses that: ICE had failed to notify his counsel in advance of the October POCR; ICE failed to review Petitioner's September Release Request submissions in connection with the October POCR;[14] and ICE stated in both the October POCR Decision and the New POCR Decision that Petitioner had failed to demonstrate that he would not pose a *danger* if released while citing only to Petitioner's illegal entry into the United States, failure to appear for immigration proceedings, and noncompliance with this order of removal, rather than citing to any criminal history, as reasons for ICE's decision to continue to detain Petitioner.  *See* Pet. ¶¶ 21, 22, 35, 36; Pet. Mem. at 9–10, 15–16.  In other words, Petitioner's principal argument is based solely on regulations and are not rooted in statutory text, binding precedent, or the Constitution.  As such, in this Court's view, there is a threshold question whether Petitioner's claim that he has not been afforded an adequate POCR is cognizable in habeas.  In all events, the problems Petitioner has identified either have been cured or are clearly insufficient to require his release

Pursuant to regulations codified at 8 C.F.R. § 241.4, ICE repeatedly reviews whether to

---

[13] Petitioner also argues that ICE's failure to comply with its own regulations violates Petitioner's constitutional due process rights, *see* Pet. Mem. at 5, which argument the Court rejects below.

[14] As explained above, ICE had separately reviewed the submission and advised counsel that it was declining to exercise its discretion to release Petitioner *before* it conducted the October POCR.  *See* October 3, 2025 Letter at 1.

continue to detain an alien who has been ordered removed, may be detained beyond the initial 90-day removal period under Section 1231(a)(6), and remains in ICE custody. *See* 8 C.F.R. §§ 241.4(a), 241.4(k). Specifically, these regulations provide for a "post-order custody review" ("POCR"), first, "[p]rior to the expiration of the removal period," again about three months later, and, thereafter, annually or based on a material change in circumstance. 8 C.F.R. §§ 241.4(k)(1)–(2).[15] "In such reviews, ICE makes a *discretionary decision* whether continued detention is justified, based on numerous factors." *Portillo*, 2022 WL 826941, at \*4 (emphasis added); *see* 8 C.F.R. §§ 241.4(d)(1) (ICE "*may* release an alien" who satisfies certain criteria) (emphasis added), 241.4(f); *see also Lim v. Arteta*, No. 1:26-cv-00461 (JLR), 2026 WL 192490, at \*1 (S.D.N.Y. Jan. 26, 2026) (noting that an alien subject to detention under Section 1231 is "released at ICE's discretion"). "The regulations also provide that there is no appeal from an ICE custody review."[16] *Callender v. Shanahan*, 281 F. Supp. 3d 428, 434 (S.D.N.Y. 2017); *accord* 8 C.F.R. § 241.4(d).

Under these regulations, an alien who may be detained under Section 1231(a)(6) has the burden to show that ICE should nonetheless exercise its discretion to release him pending his removal. *See* 8 C.F.R. § 241.4(d)(1). Specifically, the alien must "demonstrate[] to the satisfaction of" ICE that his "release will not pose a danger to the community or to the safety of other persons or to property *or* a significant risk of flight pending [his] removal from the United States." *Id.* § 241.4(d)(1) (emphasis added); *see also id.* § 241.1(e) (explaining that, "[b]efore making any recommendation or decision to release a detainee," the agency decisionmaker "must conclude" that, among other factors, the alien is "not likely to pose a threat to the community," "not likely to

---

[15] Clearly, in light of this timeline, the regulations contemplate that an alien who has been ordered removed may remain lawfully detained for more than a year.

[16] Here, Petitioner effectively seeks, by way of habeas, the "appeal from an ICE custody review" that the governing regulations expressly preclude.

violate the conditions of release; *and* . . . does not pose a significant flight risk") (emphasis added).

The regulations direct ICE to weigh a number factors, including, as pertinent here, prior "failures

to appear for immigration . . . proceedings." *Id.* § 241.1(f)(7). Before conducting a POCR, ICE

must provide notice to the alien and to a representative who has filed a "Form G–28, Notice of

Entry of Appearance as Attorney or Representative" with ICE. *Id.* §§ 241.4(d)(2), 241.4(d)(3),

214.4(h)(2). The alien or his representative "may submit information in writing in support of his

. . . release." *Id.* § 214.4(h)(2).[17]

As the Supreme Court has recognized, Congress has repeatedly enacted legislation limiting

judicial review of executive agencies' decisions in immigration matters. *See Dep't of Homeland

Sec. v. Thuraissigiam*, 591 U.S. 103 (2020); *Nishimura Ekiu v. United States*, 142 U.S. 651 (1892);

*Heikkila v. Barber*, 345 U.S. 229 (1953); *see also Henderson*, 157 F.3d at 112–121 (describing the

history of jurisdiction-stripping statutes and Supreme Court cases interpreting those statutes).

Indeed, as both the Supreme Court and the Second Circuit have recognized, "Congress ha[s]

intended to make the[] administrative decisions" of immigration officials "nonreviewable to the

fullest extent possible under the Constitution." *Henderson*, 157 F.3d at 114 (quoting *Heikkila*, 345

U.S. at 234). Indeed, the INA expressly provides that "[n]otwithstanding any other provision of

law . . . or . . . habeas corpus provision, . . . no court shall have jurisdiction to review" the "decision

---

[17] Separate regulations codified at 8 C.F.R. § 241.13 govern the situation at issue in *Zadvydas*, in which an alien is detained indefinitely "under the custody review procedures provided at [8 C.F.R.] § 241.4." 8 C.F.R. § 241.13(a). Under those regulations, the alien has the burden to come forward with "good reason to believe there is no significant likelihood of removal . . . in the reasonably foreseeable future." *Id.*; *see Callender*, 281 F. Supp. 3d at 436 ("*Zadvydas* places the burden of proving that there is no significant likelihood of removal in the reasonably foreseeable future on the alien."); *accord Agoro*, 2010 WL 9976, at *4. If ICE finds "no significant likelihood of removal," it must release him "[u]nless there are special circumstances justifying continued detention." 8 C.F.R. § 241.13(g)(1). On the other hand, if ICE finds that there is a significant likelihood of removal in the reasonably foreseeable future, it must continue to detain the alien, and there is "no administrative appeal." *Id.* § 241.13(g)(2). Here, Petitioner has not gone through the administrative process governed by the regulations codified at 8 C.F.R. § 241.13, and *Zadvydas* does not govern Petitioner's allegations that he has been deprived of an adequate POCR, which all concern alleged violations of the regulations codified at 8 C.F.R. § 241.4.

or action" of an executive agency "the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C § 1252(a)(2)(B).

To be sure, the Supreme Court has held, "habeas corpus proceedings remain available as a forum for *statutory* and *constitutional* challenges to post-removal-period detention." *Zadvydas*, 533 U.S. at 688 (emphasis added); *see Calcano-Martinez v. I.N.S.*, 232 F.3d 328, 342 (2d Cir. 2000) ("statutory and constitutional claims are within § 2241's scope"), *aff'd*, 533 U.S. 348 (2001). Yet the Second Circuit has acknowledged that "not . . . every *statutory* claim that an alien might raise is cognizable on habeas," much less every administrative decision. *Henderson*, 157 F.3d at 122 (emphasis added). Moreover, the Supreme Court has held, for "*foreigners who have never . . . been admitted into the country pursuant to law, . . . the decisions of executive or administrative officers, acting within powers expressly conferred by Congress,* **are** *due process of law*." *Thuraissigiam*, 591 U.S. at 138 (emphasis added) (quoting *Nishimura Ekiu*, 142 U.S. at 660). Thus, "on habeas," claims are "cognizable" only if they concern "the substantial rights of aliens of the sort that the courts have secularly enforced." *Henderson*, 157 F.3d at 122.

Here, the Court has already rejected "*statutory* and *constitutional* challenges to [Petitioner's] post-removal-period detention." *Zadvydas*, 533 U.S. at 688. Moreover, as explained above, the regulations governing post-order custody reviews establish the process by which ICE makes a *discretionary decision* whether or not to release an alien who by statute is subject to continued detention pending his removal. *See* 8 C.F.R. §§ 241.4(d)(1) (ICE "*may* release an alien" who satisfies certain criteria); *Portillo*, 2022 WL 826941, at *4 ("ICE makes a *discretionary decision* whether continued detention is justified") (emphasis added). As such, it is far from clear that the Court even has "jurisdiction to review" the decision by ICE to continue to detain Petitioner.

26

*See* 8 U.S.C § 1252(a)(2)(B); *see also Sol*, 274 F.3d at 651 ("federal courts do not have jurisdiction to review . . . discretionary determinations by the IJ and the BIA").

To the extent that the Court has jurisdiction to review the decision by ICE to continue to detain Petitioner, his claim that he has been denied an adequate POCR is "cognizable" only insofar as it concerns his "substantial rights" that the Court may intervene to enforce. *Henderson*, 157 F.3d at 122. Petitioner argues that his continued detention violates his right to due process. *See* Pet. Mem. at 11. However, as discussed above, there is no dispute that Petitioner illegally entered the United States, has never been lawfully admitted, and has been found inadmissible. *See* Pet. ¶¶ 1, 2; Joyce Decl. ¶¶ 8, 21; Order of Removal *In Abstentia* at 1. Thus, for Petitioner, who has never "been admitted into the country pursuant to law," a discretionary decision by ICE acting within its statutory power ***is*** "due process of law." *Thuraissigiam*, 591 U.S. at 138 (quoting *Nishimura Ekiu*, 142 U.S. at 660); *see also Arteaga-Martinez*, 596 U.S. at 582 (explaining that while executive agencies "are free to grant additional procedural rights in the exercise of their discretion," courts are not similarly free to impose such rights).

In all events, the Court finds that ICE did not violate Petitioner's substantial rights because Petitioner has not shown that he was prejudiced by its errors. *See Magellan Tech.*, 70 F.4th at 629. In particular, Petitioner stresses that ICE failed to provide notice to Petitioner's counsel in advance of the October POCR, which ICE was required by its regulations to do because Petitioner's counsel had submitted a G-28 notice of appearance. *See* Reply at 3; Pet. Dec. Letter; Pet. Feb. Letter at 1; 8 C.F.R. § 241.1(d)(3). Petitioner also stresses that ICE failed to consider in connection with the October POCR "significant evidence" that counsel had previously submitted to ICE in a separate exchange. Feb. Letter at 1; *see* September Release Request. However, after conceding that it had overlooked the G-28 submitted by Petitioner's counsel with his September Release Request, ICE

27

conducted the New POCR, for which ICE provided notice to counsel and counsel submitted documents in support of Petitioner's release.  *See* Joyce Supp. Decl. ¶ 4; Notice of New POCR; New POCR Submission; *see also* Gov. Dec. Letter; Gov. Feb. Letter.  Nevertheless, after the New POCR, "ICE [was] unable to conclude that the factors set forth at 8 C.F.R. § 241.4(e) have been satisfied."  New POCR Decision.

Moreover, before conducting the October POCR, ICE had corresponded with counsel for Petitioner and determined that Petitioner should remain detained.  Specifically, ICE responded to counsel's September Release Request, represented that it had "carefully considered all supporting documents that [counsel had] provided," together with other relevant information, and found "no compelling reason to warrant a favorable exercise of [ICE's] discretion" to release Petitioner. October 3, 2025 Letter at 1.  In other words, both before and after the deficiently-noticed October 2025 POCR, ICE—having heard from Petitioner's counsel—concluded that Petitioner should remain detained pending removal.  *See* October 3, 2025 Letter; New POCR Decision.  As such, Petitioner cannot show that he was prejudiced by the problems he has identified with the October POCR.  *See Magellan Tech.*, 70 F.4th at 629–31.

Petitioner also argues that he must be released because, he contends, "ICE declined to release Petitioner on the sole basis that he was a danger to others."  Pet. Dec. Letter at 2; *see* Pet. Feb. Letter at 2.  The record reflects that, in both the October POCR Decision and the New POCR Decision, ICE stated that it had "determined to maintain [Petitioner's] custody because [he had] not demonstrated that, if released, [he would] not pose a danger to the community or the safety of other persons."  October POCR Decision at 1; New POCR Decision at 1.  However, as Petitioner stresses, those decisions do not cite any specific evidence of his dangerousness.  Rather, ICE cited Petitioner's illegal entry into the United States, his failure to appear at immigration proceedings,

his order of removal *in abstentia*, and his arrest, years later, pursuant to an outstanding order of removal.  *See* New POCR Decision at 1; October POCR Decision at 1.  ICE further specified that its decision to continue to detain Petitioner was "[b]ased on the [information cited] above."  New POCR Decision at 1; *accord* October POCR Decision at 1.

The information ICE cited does not necessarily support concluding that Petitioner is a danger to his community, and Petitioner submitted evidence that a number of members of his community do not consider him dangerous.  *See* Pet. New POCR Submission; September Release Request.  However, the information ICE cited clearly supports a finding that Petitioner is "unlikely to comply with [his] order of removal," 8 U.S.C. § 1231(6)(b), since it reflects Petitioner's pattern of disregard for U.S. immigration law.  Pursuant to 8 C.F.R. § 241.4(e), ICE cannot make "any recommendation or decision to release a detainee" unless it concludes that he "does not pose a significant flight risk if released," and "is not likely to violate the conditions of release," in addition to finding that he "is not likely to pose a threat to the community," among other prerequisites.  8 C.F.R. §§ 241.4(e)(4)–(6).  ICE is also expressly required to consider "failures to appear for immigration . . . proceedings."  *Id.* § 241.4(f)(7).

Assuming the Court has authority to review the decision, the Court recognizes that it might have been error for ICE to assert that it had decided to continue to detain Petitioner "because" he had not shown that he is not a danger.  New POCR Decision at 1; *accord* October POCR Decision at 1.  However, courts "will not disturb" an agency's decision if "the outcome" would "be the same absent [the] error."  *Green Island Power Auth. v. FERC*, 577 F.3d 148, 165 (2d Cir. 2009); *see Magellan Tech.*, 70 F.4th at 629–31.  The Court cannot say that it was arbitrary and capricious for ICE to "conclude that the factors set forth at 8 C.F.R. § 241.4(e)" were not "satisfied" in light of Petitioner's documented history of noncompliance with our immigration law, his immigration

29

proceedings, and an order of removal, all of which ICE cited as "[b]ase[s]" to continue his detention.  New POCR Decision; *accord* October POCR Decision; *see Magellan Tech.*, 70 F.4th at 630.  "The potential error" of ICE also citing dangerousness "did not affect" the dispositive conclusion that Petitioner had not satisfied *all* of the criteria for release.  *Magellan Tech.*, 70 F.4th at 631.

Petitioner contends, in effect, that the Court should order his release because post-order custody reviews are a sham in which ICE "deliberately" violates its own regulations and otherwise acts in bad faith to deprive aliens of their rights.  Pet. Feb. Letter at 1.  However, "a presumption of regularity attaches to the actions of Government agencies."  *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001).  The Court cannot simply accept Petitioner's unsupported, generalized contention that ICE deliberately skirts the rules and did so here.  It is not, as Petitioner contends, implausible that ICE unintentionally overlooked counsel's submission of a G-28 notice of appearance, which was submitted to ICE via email "in the same PDF" with voluminous other materials.  Joyce Decl. ¶ 4; *see* Pet. Feb. Letter at 2; Pet. Dec. Letter at 2; *see also supra* nn. 8, 9. The Court likewise is not free to order the Government to release Petitioner because ICE arguably was sloppy when it prominently cited a risk of dangerousness in its decisions to continue Petitioner's detention instead of stressing the risk that, if released, Petitioner will flee and fail to comply with efforts to remove him.

The sole question before the Court in a habeas case is whether Petitioner has been subjected to "unlawful executive detention."  *Thuraissigiam*, 591 U.S. at 119.  The Court finds that Petitioner is lawfully detained.  As such, the Petition is DENIED in its entirety.

### III.   CONCLUSION

For all of the reasons set forth above, Petitioner's motion for voluntary dismissal without

prejudice [ECF No. 38] is DENIED, and the Petition for a writ of habeas corpus and request for emergency relief [ECF Nos. 1, 7, 9, 33] are DENIED.  The Clerk of Court respectfully is requested to close all open motions and to close this case.

**SO ORDERED.**

**Date:   April 30, 2026**
**       New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**

31